# STATE OF MISSOURI, Respondent, v. ANTHONY POLLARD, Appellant.

### Kansas City Court of Appeals, April 3, 1911.

1. **Crimes and Punishments: Violation of Local Option Law: Prima Facie Case.** Where defendant was convicted on an information for violation of the Local Option Law; and he contended that the state did not show affirmatively that said law was in force in the city; held, that the state made out a prima facie case when it put in proof the journal of the city council declaring the result of the local option election, and proof of publication of its adoption for four consecutive weeks in a newspaper published in the county.

2. **INTOXICATING LIQUORS: Sales: Defendant Acting as Agent or Principal: Jury Question.** Where defendant was paid a lump sum for the liquor, and it does not appear that any part of the same was to go to him for his services in procuring the liquor, the transaction indicated a sale, and in any event, it was for the jury to say whether defendant was acting in the capacity of an agent of the prosecuting witnesses in procuring the whiskey, or was making the sale of it on his own account.

3. **TRIAL PRACTICE: Closing Remarks by Prosecuting Attorney.** One of the points in question was whether defendant had purchased the liquor in controversy at a certain drug store, or had merely gone into the drug store as a ruse, returned, and delivered to the prosecuting witness whiskey which he had been carrying continuously in his pocket. The justice, before whom defendant was first tried, testified in the circuit court that defendant had told him he had not bought any whiskey from the druggists on the day in question. The prosecuting attorney, in his closing remarks to the jury said: "the Justice says that defendant says he didn't get any liquor there at that place. That is a fact gentlemen, *I had it read over to me.*" Held, that, although the prosecuting attorney was not acting within the scope of his duty when he intimated that he had seen what the witness had said, and that it was so taken down in writing, yet, as he quoted the remark word for word, it could not work any prejudice to defendant, and hence constituted no ground for reversal.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Higbee & Mills* for appellant.

*J. E. Rieger* for respondent.

BROADDUS, P. J.—The defendant was convicted on an information filed by the prosecuting attorney of Adair county for violation of the Local Option Law, and fined three hundred dollars. The defendant appealed.

The information is in the usual form and charges that defendant on or about the 12th day of February, 1909, unlawfully sold at the city of Kirksville, one quart of whiskey for the sum of one dollar. The information charges that the Local Option Law was adopted at and in the city of Kirksville in Benton township, Adair county, Missouri, on the 16th day of January, 1908, which at the time of the filing of the petition and the adoption of said Local Option Law was a city of twenty-five hundred or more inhabitants.

The defendant was convicted in a trial before a justice of the peace from which he appealed to the circuit court of the county. The state introduced the records of the city of Kirksville showing that the Local Option Law had been adopted in the city; and proof was made by the affidavit of the manager of the Kirksville *Journal,* a weekly newspaper published in the county of Adair and State of Missouri, that the notice of the result of the election had been printed and published in said newspaper at least for four weeks successively; the first insertion and publication being on the 26th day of December, 1907. The notice so published recites, that the election was held on the 20th day of December, 1907.

The evidence of Andy Cain, a witness for the state was that; he met defendant on the streets of Kirksville on or about the 12th of November, 1908. At the time Jesse Young and a Mr. Dorman were with the witness. Dorman said to him that defendant could. get some whiskey for them, and they gave him the money to get it; that they gave him a dollar and he brought them two pints of the article. On cross-examination he was asked if they were at the time wondering where they could get whiskey, and did not know where to get it. To which he answered, yes. "Q. And then you saw Mr. Pollard coming along and decided that he could get it for you? A. Yes, sir. Q. And you gave him the money and asked him to get it for you? A. We did. Q. And you did not buy it of him? A. I don't know. It is a question. We got the booze. Q. What was the conversation with Pollard? A. We asked him if he could get us some whiskey. Q. What did he say to you or to the two of you? A. He said he could. Q. And you gave him the quarter then to get it for you? A. Whiskey. Q. Did he tell you where he would get it? A. No, sir." The witness further stated that defendant went down in front of some building near what he thought to be a drug store, where he went in, after which he came back and brought the liquor; that he stayed in the drug store but a short while—not over a minute and a half; and that he noticed the bottle was warm when he received it. This witness said that the occurrence was on or about the 12th day of February, 1909.

Jesse Young, another witness, testified to a similar state of facts; and further that he paid a quarter, Cain a quarter, and Dorman fifty cents to defendant for the liquor. He was asked: "That money was given him for the purpose that he might go and try to buy you some liquor. You got him to get it for you because you didn't know where to get it? A. Yes, sir." He also stated that

the whiskey was "pretty warm", and that defendant did not return any change when he brought the whiskey.

Dorman testified substantially as the other two witnesses; and that the bottle was "rather warm, about like a man had packed it around in his pocket; I have packed one or two." It seems that one of the party had suspicions about the defendant returning after they had given him the money, and witness went down to the drug store, where he found him standing talking to some men, and he said to witness there was a "big crowd in there;" that "he stood a little bit, and walked in the drug store and come right back out" with the whiskey. He had it in his hip pockets. The drug store mentioned was that of McKeehan & Reeds.

Harry Lindsey, the justice before whom the defendant was tried, testified that defendant told him he had not bought any whiskey from McKeehan & Reeds on the day mentioned.

The defendant testified that he bought the whiskey from a clerk in said drug store, but not from either of the proprietors; and that he paid a dollar for it. He admits that he told Squire Lindsey that he did not buy the whiskey from either McKeehan or Reeds. The defendant offered a demurrer to the state's case upon the close of its evidence, which the court overruled.

Mr. Reiger, the prosecuting attorney, in his closing remarks to the jury said: "Lindsey says that he said he didn't get any liquor there at that place. That is a fact gentlemen, I had it read over to me." These remarks were objected to by defendant.

The defendant asked six instructions of which the court gave five and refused the sixth. The sixth was in effect asking the court to direct a verdict for the defendant. Among those given for defendant there was one to the effect; that it was not unlawful to buy whiskey in Kirksville; that the Local Option Law only makes it unlawful to sell whiskey; that notwithstanding the Local Option Law, any person has the lawful right to

buy it, either himself or to use another person as his agent to buy it. And that if the jury believed from the evidence that defendant, merely took the money of the prosecuting witnesses and used the same in purchasing the whiskey that he delivered to them, then his relation to the transaction was that of agent for the parties and they would acquit him.

As the defendant has filed no statement nor brief pointing out any particular errors committed by the court to his prejudice, we have gone over the whole record in order to ascertain if there were such. We judge by what occurred at the trial that the defendant relied for acquittal upon the contention that the state did not show affirmatively that the Local Option Law was in force in Kirksville; that the proof did not show a sale made by defendant; and that the remarks of the prosecuting attorney in his address to the jury were prejudicial. At the same time we have carefully considered the information on which the trial was had.

As to the first point we think the state made out a prima facie case when it put in proof the journal of the city council declaring the result of the local option election, and proof of publication of its adoption for four consecutive weeks in a newspaper published in the county. [State v. Searcy, 111 Mo. 236; State v. Searcy, 39 Mo. App. 393.]

As to the second point whether the proof was sufficient to constitute the defendant guilty, we are of the opinion that it was. A case very similar was before the St. Louis Court of Appeals where it is held that: "In a prosecution for violation of the Local Option Law, where it was shown that defendant undertook to procure whiskey for another party, was given a dollar for the purpose and afterwards left the whiskey where the other party could get it, this was sufficient to warrant a conviction on the theory that he was the seller and not merely the agent of the purchaser." [State v. Melton, 130 Mo. App. 262.] In this case there is nothing to

indicate that the prosecuting witnesses were looking to defendant to act as their agent in procuring the whiskey, but on the contrary were relying on him to obtain it for them for so much money. He was paid a lump sum for the liquor, and it does not appear that any part of the same was to go to him for his services in procuring it. The transaction indicated a sale, and in any event it was for the jury to say from all the evidence and the instructions noted, whether the defendant was acting in the capacity of an agent in procuring the whiskey or was making the sale of it on his own account.

The prosecuting attorney was not acting within the scope of his duty when he made the remarks as to the testimony of Lindsey. He had a right to quote from his memory what the witness had said, but he had no right to say as he intimated, that he had seen it and that it was so taken down in writing; but as he quoted it word for word and as it could not work any prejudice to defendant, therefore, it affords no ground for reversal.

Finding the information sufficient, and satisfactory evidence that the Local Option Law was in force in Kirksville; and that the finding of the jury was supported by an abundance of evidence, we think the conviction should stand. The cause is affirmed. All concur.